**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **CRIMINAL NO. 25-261** |
| **TREYTON DANIEL AUBUCHON**<br>**a/ka/ "Aloel"** | : | |

## GOVERNMENT'S CHANGE OF PLEA MEMORANDUM

## I. BACKGROUND

Defendant Treyton Daniel Aubuchon a/k/a Aloel ("Aubuchon") is charged in a superseding information with three counts: (1) wire fraud conspiracy (in violation of 18 U.S.C. § 1349), money laundering conspiracy (in violation of 18 U.S.C. § 1956(h)), and aggravated identity theft (in violation of 18 U.S.C. § 1028A), all arising from the defendant's involvement in an online criminal conspiracy to steal and launder cryptocurrency. The defendant has notified the government through his counsel that he wishes to plead guilty to the superseding information.

## II. APPLICABLE STATUTES AND ESSENTIAL ELEMENTS OF THE OFFENSES

### 1) Count One: Wire Fraud Conspiracy

To establish a violation of 18 U.S.C. § 1349, the government must prove the following essential elements beyond a reasonable doubt:

1. That two or more persons agreed to commit wire fraud;
2. The defendant was a party to or member of that agreement; and
3. The defendant joined the agreement or conspiracy knowing of its objective to commit wire fraud and intending to join together with at least one other alleged conspirator to achieve the objective.

To establish the underlying offense of wire fraud, 18 U.S.C. § 1343, the government must prove the following essential elements beyond a reasonable doubt:

1. The defendant knowingly devised a scheme to defraud or to obtain money or property by materially false or fraudulent pretenses, representations or promises or willfully participated in such a scheme with knowledge of its fraudulent nature;
2. The defendant acted with the intent to defraud; and
3. In advancing, furthering, or carrying out the scheme, the defendant transmitted any writing, signal, or sound by means of a wire, radio, or television communication in interstate commerce or caused the transmission of any writing, signal, or sound of some kind by means of a wire, radio, or television communication in interstate commerce.

**2) Count Two: Conspiracy to Launder Money**

To establish a violation of 18 U.S.C. § 1956(h), the government must prove the following essential elements beyond a reasonable doubt:

1. There was an agreement to commit money laundering;
2. The defendant knew the objective of the agreement; and
3. The defendant joined the agreement with the intent to further its unlawful purpose.

To prove the underlying substantive violation of 18 U.S.C. § 1956, the government must prove beyond a reasonable doubt the following essential elements:

1. The defendant conducted or attempted to conduct a financial transaction, which affected interstate commerce;
2. The defendant conducted the financial transaction with the proceeds of a specified unlawful activity, that is, wire fraud;

3. The defendant knew the transaction involved the proceeds of some form of unlawful activity; and
4. The defendant conducted the financial transaction with knowledge that the transaction was designed in whole or in part to conceal or disguise the nature, location, source, ownership, or control of the proceeds of the wire fraud.

**3) Count Three: Aggravated Identity Theft**

To establish a violation of 18 U.S.C. § 1028A, the government must prove the following essential elements beyond a reasonable doubt:

1. The defendant knowingly transferred, possessed, and/or used without legal authority a means of identification of another person;
2. The defendant knew that the means of identification belonged to a real person; and
3. The defendant did so during and in relation to an enumerated felony, here wire fraud.

## III. MAXIMUM PENALTIES

The following statutory maximum penalties apply in this case:

1) Count One, charging wire fraud conspiracy: 20 years' imprisonment, 3 years' supervised release, a fine of $250,000, and a $100 special assessment;
2) Count Two, charging money laundering conspiracy: 20 years' imprisonment; 3 years' supervised release; a fine of $500,000 or twice the value of the property involved in the transactions, whichever is greater; and a $100 special assessment; and
3) Count Three, charging aggravated identity theft: a mandatory 2 years' imprisonment to run consecutive to any other sentence, 1 year of supervised release, a $250,000 fine, and a $100 special assessment.

The total permissible statutory maximum sentence is a term of imprisonment of 42 years; a 2-year mandatory minimum sentence consecutive to any other sentence imposed; 3 years' supervised release; a $1,000,000 fine, or a fine of $500,000 plus twice the value of the property involved in the transactions charged in Count Two, whichever is greater; and a $300 special assessment. Full restitution of at least $1,018,701.51 shall be ordered. Forfeiture of any property, real or personal, that constitutes or is derived from proceeds traceable to the commission of Count One, and, with respect to Count Two, forfeiture of any property, real or personal, involved in such offenses, also may be ordered. The defendant further understands that supervised release may be revoked if its terms and conditions are violated. When supervised release is revoked, the original term of imprisonment may be increased by up to 2 years on Counts One and Two, and 1 year on Count Three. Thus, a violation of supervised release increases the possible period of incarceration and makes it possible that the defendant will have to serve the original sentence, plus a substantial additional period, without credit for time already spent on supervised release.

## IV. **<u>FACTUAL BASIS FOR THE PLEA</u>**

If this case were to proceed to trial, the government would prove the following facts, among others, through witness testimony and exhibits. This memorandum sets forth only the essential facts that would need to be proved to establish the elements of the offenses charged.

From at least October 2023 through June 2025, the defendant was part of a worldwide criminal organization called "The Com" as well as a subgroup of the Com known as CryptoChameleon. The Com consists of a geographically diverse group of individuals, including many juveniles, who are organized in various subgroups, all of whom coordinate through online communication applications such as Discord and Telegram to engage in various types of criminal

activity to include computer intrusions, SIM swapping, and cryptocurrency theft. Members of the Com have victimized (and continue to victimize) U.S.-based individuals, including by gaining unlawful access to sensitive account information in order to steal the victims' cryptocurrency.

CryptoChameleon is a sub-group within the Com and the Defendant was also involved in CyrptoChameleon. CryptoChameleon employs sophisticated phishing panels that mimic the sign-on pages for cryptocurrency companies and exchanges, and other providers of online services, such as email providers. Users of the CryptoChameleon Phishing Panel are given a unique user ID and password. Once granted access to the CryptoChameleon Phishing Panel, users are provided with an admin domain, which generally mimics the name of a cryptocurrency exchange, from which to log-in to the CryptoChameleon Phishing Panel. Users are also granted access to a specific subset of phishing panel domains which they can deploy against victims. Using a Telegram bot Application Programing Interface coded into the CryptoChameleon Phishing Panel, the conspirators are able to monitor both actions taken by the user and by the victims and to collect means of identification belonging to victims, including passwords, multi-factor authentication codes, and seed phrases. Using the panel, disposable Internet-based phone numbers, and social engineering, individuals associated with CryptoChameleon work in teams to steal millions in cryptocurrency from victims throughout the United States.

The defendant had his own log-in and password to the CryptoChameleon Phishing Panel. As part of the conspiracy, the defendant used a variety of online tools, databases, and websites to obtain means of identification of individuals whom the defendant believed had cryptocurrency accounts. To effectuate the wire fraud and money laundering scheme, the defendant worked with other individuals who, among other things, would contact victims, via text message, email, or through voice or IP and Internet phone calls, posing as representatives of cryptocurrency or other

companies to trick victims into providing personal identification information, two-factor authentication codes, and other account information.

Using the CryptoChameleon Phishing Panel and other tools, the defendant and his conspirators caused text messages, voice calls, links, and push notifications to be sent to victims, thereby tricking victims into revealing account log-in information, passwords, multi-factor authentication codes, seed phrases, and other means of identification to the conspirators. With this fraudulently obtained information, the defendant and his conspirators would use victims' means of identification to access victims' cryptocurrency accounts at cryptocurrency exchanges, and to access other online accounts belonging to the victims, and transferred the victims' cryptocurrency into wallets controlled by the conspirators.

After successfully stealing a victim's cryptocurrency funds, the defendant would launder the funds by, among other things, converting the funds into different cryptocurrencies, including a particular cryptocurrency that did not have a public blockchain, sending the funds through a variety of different wallets, and by using an online gambling website to launder the funds. The defendant did so in order to conceal and disguise the nature, location, source, ownership, and control of the proceeds of the wire fraud scheme.

For example, on November 4, 2024, the defendant and a conspirator caused a call to be placed to T.M. from a Google Voice number over the Internet. The caller purported to be a representative from a cryptocurrency exchange and told T.M. that his account had been compromised. During that call, the defendant caused a text message to be sent to T.M. from a Google Voice Number. That text message included a link to a spoofed website containing the name of the cryptocurrency exchange. The link provided to T.M. was one of the CryptoChameleon Phishing Panel domains. The defendant and the caller tricked T.M. into providing T.M.'s multi-

factor authentication code from the cryptocurrency exchange purportedly to transfer his funds to a secure wallet. In fact, the defendant and the caller used T.M.'s means of identification to access T.M.'s cryptocurrency account and transferred the funds from that account to wallets controlled by the defendant and his conspirators. Over the course of the scheme, the defendant and his conspirators stole more than $2.3 million from at least 66 victims.

## V. <u>PLEA AGREEMENT</u>

The parties have entered into a plea agreement, an executed copy of which is attached hereto as Exhibit A. The agreement includes a supplement to be filed under seal.

As set forth in Exhibit A, under the terms of the plea agreement, the defendant is pleading guilty to all three counts of the superseding information and waiving prosecution by indictment. The defendant further agrees not to contest forfeiture as set forth in the notice of forfeiture. Specifically, under the terms of the plea agreement, the defendant agrees to pay restitution of at least $1,018,701.51 and agrees to forfeit his right, title, and interest in a Dell desktop with serial number Ax210NGW and a Black iPhone with serial number JN7W417Y4G, which were involved in the offense charged in Count 2 (money laundering).

Pursuant to the terms of the plea agreement, the parties stipulate and agree that:

a. The base offense level for Count One is 7 pursuant to USSG § 2B1.1(a);

b. The loss exceeded $1,500,000, but did not exceed $3,500,000, resulting in a 16-level upward adjustment pursuant to USSG § 2B1.1(b)(1)(I);

c. The defendant's conduct involved ten or more victims, resulting in a 2-level upward adjustment pursuant to USSG § 2B1.1(b)(2)(A)(i);

d. The defendant's offense involved sophisticated means and the defendant intentionally engaged in or caused the conduct constituting sophisticated means, resulting in a 2-level upward adjustment pursuant to USSG § 2B1.1(b)(10);

e. The defendant's conviction will be under 18 U.S.C. § 1956 for Count Two and, thus, he should receive an upward adjustment of 2 levels pursuant to USSG § 2S1.1(b)(2)(B);

f. The defendant's offense involved sophisticated laundering, and therefore he should receive an upward adjustment of 2 levels pursuant to USSG § 2S1.1(b)(3);

g. The defendant has demonstrated acceptance of responsibility for his offense, making the defendant eligible for a 2-level downward adjustment under USSG § 3E1.1(a); and

h. The defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying the government of his intent to plead guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently, resulting in a 1-level downward adjustment under USSG § 3E1.1(b).

## VI. CONCLUSION

With the advice and consent of his attorney, the defendant has negotiated a guilty plea agreement. His decision to plead guilty appears to be a voluntary, knowing, and intelligent one, and the factual basis for the plea is sufficient. Accordingly, the government submits that the Court should accept his guilty plea.

Respectfully submitted,

DAVID METCALF
United States Attorney

*/s/ Sarah M. Wolfe*
Sarah M. Wolfe
Assistant United States Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that, on this date, I caused a true and correct copy of the foregoing Government's Change of Plea Memorandum to be served by electronic mail upon the following:

Jason Bologna
jason.bologna@bipc.com

*/s/ Sarah M. Wolfe*
Sarah M. Wolfe
Assistant United States Attorney

Date: May 15, 2026